# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

DANIEL MASAS,

         Plaintiff,

 v.                9:13-CV-617 (GLS/ATB)

T. CONTE, et al.,

         Defendants.

DANIEL MASAS, Plaintiff, *pro se*
JOSHUA L. FARRELL, Ass't Att'y Gen., for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

  In this civil rights action, plaintiff claims that, in 2013, two correction officers ("COs") of the New York State Department of Correctional and Community Services ("DOCCS") violated plaintiff's federal constitutional rights during his confinement at Mid-State Correctional Facility ("Mid-state"). In particular, the amended complaint alleges that defendants Conte and Kochan harassed and threatened plaintiff if he would not shave his beard, contrary to plaintiff's Muslim faith; that CO Kochan grazed plaintiff on the back of his head while trying to knock off plaintiff's kufi; and that CO Conte delayed plaintiff's medical treatment for an inflamed appendix for approximately two and a half hours. (Am. Compl., Dkt. No. 19).[1]

---

[1] The amended complaint also mentions that defendant Kochan issued plaintiff a misbehavior report at the time he hit plaintiff on the head and warned plaintiff not to say anything to the hearing officer, which caused plaintiff to plead guilty to the disciplinary charge. (Dkt. No. 19 at 4). Plaintiff further alleged that unidentified DOCCS personnel destroyed his kufi and ripped his Qur'ans. (Dkt. No. 19 at 9). During his July 25, 2104 deposition, plaintiff clarified that the only claims in his amended complaint related to the threats against him if he would not shave his beard and the delay in medical care for his appendix. (Dep. Tr. at 17, Dkt. No. 44-9 at 44).

Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 44), to which plaintiff did not respond. This matter was referred for Report and Recommendation on October 6, 2014 by Chief U.S. District Judge Gary L. Sharpe, pursuant to 28 U.S.C. § 636(b) and Local Rule N.D.N.Y. 72.3(c).

For the reasons set forth below, this court recommends that defendants' summary judgment motion be granted. Plaintiff's claims should be dismissed because no rational fact finder could conclude that he exhausted his administrative remedies, as required before filing an action under 42 U.S.C. § 1983.

## DISCUSSION

**I.  Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which

support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general. *Smith v. Woods*, 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006). Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.'" *Id.,* 2006 WL 1133247, at *3 & n.11 (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a

3

district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")).

## II. Exhaustion of Administrative Remedies

As noted above, plaintiff has interpreted his amended complaint to state two civil rights claims–that, in April 2013, the defendants threatened to assault plaintiff if he would not shave his beard, contrary to his Muslim religious beliefs,[2] and that

---

[2] Defense counsel has characterized plaintiff's first claim as one under the Eighth Amendment. Plaintiff assert that defendant Kochan hit plaintiff on the back of his head on one occasion, but acknowledged in his deposition, that "it bothered me more than hurt." (Pl.'s Dep. Tr. at 11-12). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000). It seems clear that plaintiff would not have a viable Eighth Amendment claim based on one, *de minimis*, use of force, and that his claim that he shaved his beard because of threats from the defendants is more appropriately characterized as an alleged violation of plaintiff's First Amendment right of free exercise of religion. *See, e.g., Mack v. Griffin*, No. 9:04-CV-588 (NAM/RFT), 2006 WL 2792736, at *6 (N.D.N.Y. Sept. 27, 2006) (evaluating a Muslim prisoner's claim involving shaving his beard as a First Amendment free exercise claim). Defense counsel asserts that plaintiff's claims relating to shaving his beard would not survive summary judgment on the merits because such a claim is not supported by plaintiff's allegations of mere harassment and threats. The case law indicates that a First Amendment religion claim cannot be predicated only on harassment and threats, where plaintiff does not also suffers an injury from a significant, related assault or where he is not also threatened with disciplinary action if he would not shave his beard. *See, e.g.*, *Hamilton v. Erhardt*, No. 10-CV-6234 , 2011 WL 3476475, at *2, 4, 5 (W.D.N.Y. Aug. 9, 2011) (granting a motion under Fed. R. Civ. P. 12(b)(6) dismissing claims that plaintiff was forced to shave his beard because of verbal threats and harassment, but allowing a claim to go forward with respect to an incident where defendants threatened that plaintiff could lose his life if he did not shave his beard and that he would be written up for disobeying a direct order) (citing *Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) (finding that allegations of verbal harassment and simultaneous physical abuse were sufficient to state a § 1983 claim). Because this court concludes that defendants should be granted summary judgment based on plaintiff's failure to exhaust administrative remedies, I do not need to address whether plaintiff has raised a material issue of fact as to whether his First Amendment claim is based on more than mere threats and harassment.

4

defendant Conte delayed plaintiff's medical care for his appendix in the summer of 2013.[3] (Pl.'s Dep. Tr. at 9-17). Based on the record discussed below, the court concludes that no reasonable fact finder could conclude that the plaintiff filed and/or appealed grievances relating to those claims. Accordingly this court recommends that the amended complaint be dismissed for failure to exhaust administrative remedies.

A. **Applicable Law**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004)

---

[3] Defendants argue that the two and one-half hour delay in getting medical attention that plaintiff attributes to defendant Conte was not a sufficiently serious deprivation to support an Eighth Amendment medical claim, because plaintiff was thereafter treated for his appendix for two days in the prison infirmary before doctors concluded that he needed to be taken to the hospital for appendix surgery. (Def.s' Mem. of Law at 10-11, Dkt. No. 44-2; Pl.'s Dep. Tr. at 14-17). *See, e.g., Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (when a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone"); *Bellotto v. County of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007) (the standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain). Defendants also assert that defendant Conte was not deliberately indifferent to plaintiff's medical needs, because plaintiff has not disputed CO Conte's claim that he promptly advised a nurse of plaintiff's complaints and relied on the medical staff to take appropriate action. (Def.s' Mem. of Law at 11). *See, e.g., Salahuddin v. Goord*, 467 F.3d 263, 280-81 (2d Cir. 2006) (in order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety) (citing, *inter alia*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Again, the court need not address whether summary judgement should be granted on the merits with respect to plaintiff's medical care claim because that claim should be dismissed based on plaintiff's failure to exhaust administrative remedies.

5

(citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (exhaustion requirement applies, *inter alia*, to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court held that, in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the superintendent of the relevant facility. *Id*. § 701.5(c). Adverse decisions at the superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes

6

that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

At the same time that the Second Circuit decided *Giano*, it also decided four related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[4] Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.* Whether the *Hemphill* test survives following the Supreme Court's decision in *Woodford*, has been a matter of some discussion.[5] Although the Second Circuit has

---

[4] *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

[5] See, e.g., *Newman v. Duncan*, 04-CV-395 (TJM/DRH), 2007 WL 2847304, at * 2 n. 4 (N.D.N.Y. Sept. 26, 2007); *Shariff v. Coombe*, 655 F. Supp. 2d 274, 285-86 n.7 (S.D.N.Y. 2009).

not explicitly held that *Hemphill* remains good law, it has applied the three-part inquiry in post-*Woodford* cases. *See, e.g.*, *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011); *Davis v. State of New York*, 311 F. App'x 397, 399 (2d Cir. 2009).

### B. Relevant Facts

In plaintiff's initial complaint, dated May 20, 2013, he acknowledged that there was a prisoner grievance program at Mid-State and stated that he did not present the facts relating to his complaint in the grievance program because he was "threatened" by the defendants. (Dkt. No. 19 at 2-3). In the August 28, 2013 letter amending his complaint, plaintiff stated that his "grievances were not being heard." (Dkt. No. 19 at 8). In a March 18, 2014 affidavit in support of his amended complaint, plaintiff claimed that he "was submitting several grievances pertaining to the fact that I had been assaulted threatened and forced into shaving my beard. However, my grievances were not being processed in accordance with [DOCCS] Directive 4040 . . . and I was never given any log number." (Dkt. No. 37 at 1). Plaintiff attached to his supplemental affidavit correspondence indicating that he had communicated with the Queens County Bar Association and the U.S. Department of Justice, starting in late June 2014, although the attachments do not indicate the nature of plaintiff's complaints to these entities. (Dkt. No. 37 at 3-6).

In support of defendants' motion, counsel attached copies of five grievances that plaintiff submitted at Mid-State between April and August 2013, and related documents. (Dkt. No. 44-9 at 6-24). None of the grievances involved plaintiff's claim that defendants Conte and/or Kochan harassed and threatened plaintiff if he would not

8

shave his beard.  One grievance complained that the facility doctor was incompetent in treating plaintiff for a "burst" appendix, but did not mention defendant Conte.  (Dkt. No. 44-9 at 21).  The supporting paperwork submitted by the defendants indicates that all five of plaintiff's grievances were investigated and addressed, formally or informally, at Mid-State (Dkt. No. 44-9 at 6-10, 12-15, 17-24), although only one grievance appeared to have a grievance number formally assigned to it (Dkt. No. 44-9 at 7).  Jeffrey Hale, the DOCCS Assistant Director of the Inmate Grievance Program ("IGP") and the custodian of records for CORC, which maintains files of grievance appeals by inmates, submitted a declaration in support of defendant's summary judgment motion.  Ass't Dir. Hale certified that CORC had no record of any grievance appeal taken by plaintiff relative to any claim made between April and August 2013.  (Hale Decl. ¶¶ 2, 8-9, Dkt. No. 44-7 (referencing Ex. A, Dkt. No. 44-9 at 1-3)).

During his July 2014 deposition, plaintiff acknowledged that he received orientation about the grievance process in connection with his current incarceration by DOCCS, and was aware of the grievance process at Mid-State.  (Pl.'s Dep. Tr. at 7-8, 17-18, 19).  Plaintiff admitted that he never had a problem getting an inmate grievance complaint form and identified one of the grievances he submitted at Mid-State about an incident unrelated to this action.  (*Id*. at 19-20).  Plaintiff stated that he did not maintain copies of his grievances.  (*Id*. at 20).

During his deposition, plaintiff claimed that he filed an inmate grievance complaint form relating to the alleged threats made by CO Conte "[r]ight after the incident." (*Id.* at 20-21).  Plaintiff claimed that he was told by "the guy . . . doing

9

grievances for other people . . . that he wasn't receiving any grievance for any incident that occurred with Officer Conte." (*Id*. at 21). Plaintiff testified that he never received a response to his grievance with respect to CO Conte's threats, but that he never exhausted his administrative appeal by going to the CORC relative to this purported grievance. Plaintiff also acknowledged that he did not appeal his grievance with respect to the medical care for his appendix to the CORC, saying that, although he was not necessarily satisfied with how that grievance was resolved, he "just didn't want to be bothered with it anymore." (*Id.* at 22-23). Plaintiff admitted that he knew "there was a process to go to the superintendent and then to CORC on an appeal of a grievance that [he] was not happy with" but that it was his "own choice not to" go through with appeals of his grievances. (*Id*. at 23).

### C. Analysis

"Courts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement." *Rosado v. Fessetto*, No. 9:09-CV-67 (DNH/ATB), 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) (Rep't-Rec.), *adopted*, 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010) (citing, *inter alia*, *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) (plaintiff's allegations that his grievances were misplaced or destroyed by corrections officers ultimately does not relieve him of the requirement to appeal those claims to the next level once it becomes clear that no response is forthcoming)). Plaintiff's conclusory claim that he filed a grievance relating to the defendants' alleged threats about his beard, and that the grievance was ignored by officials at Mid-State, is insufficient to

overcome defendants' summary judgment motion, particularly in light of the documentary evidence that five of plaintiff's grievances at Mid-State were received and addressed by the IGP at that facility during the relevant time period.[6] *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case").

In any event, the failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal must be appealed to the next level, including the CORC, in order to properly complete the grievance process. *Pacheco v. Drown*, 9:06-CV-20 (GTS/GHL), 2010 WL 144400, at *19 & n. 21 (N.D.N.Y. Jan. 11, 2010); *Smith v. Kelly*, 985 F. Supp. 2d 275, 281-82 & n.8 (N.D.N.Y. 2013) (the weight of authority (and better-reasoned authority) has held the IGRC's non-response must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number) (collecting cases).[7] Plaintiff has conceded that, even though he

---

[6] As noted above, plaintiff's subsequent claims that he filed a grievance with respect to the defendants' threats about plaintiff's beard is inconsistent with his original complaint, which indicated that plaintiff filed no grievances with respect to the claims in the complaint.

[7] *Cf. Johnson v. Tedford*, 616 F. Supp. 2d 321, 326 (N.D.N.Y. 2007) (Sharpe, J.) ("in light of the Second Circuit's *Hemphill* decision, several Southern District [of New York] cases have recognized that when a prisoner asserts a grievance to which there is no response, and it is not recorded or assigned a grievance number, administrative remedies may be completely exhausted, as there is nothing on record for the next administrative level to review"). In this case, unlike *Johnson v. Tedford*, plaintiff has offered no corroboration of his claim that he filed a grievance with respect to the defendants' alleged threats that was never processed by the IGP. *Johnson v. Tedford*, 616 F. Supp. 2d at 326 (while the court would normally be hesitant to afford weight to plaintiff's assertions that his grievance was never assigned a number or responded to, there is some evidence to support his position in the form of inquiry letters and official responses regarding the grievance at issue).

knew about the grievance appeal process, he did not appeal either the grievance he claimed to file with respect to the threats of CO Conte and Kochan relating to plaintiff's beard or the grievance against the facility doctor relating to the treatment of his appendicitis. Thus, no reasonable fact finder could conclude that plaintiff exhausted his administrative remedies with respect to his First Amendment religion claim or his medical care claim against defendant Conte, even if plaintiff had filed initial grievances with respect to those claims.

Finally, plaintiff has offered no evidence to suggest that the grievance process was unavailable to him, that the defendants threatened him or did anything else that should estop them from asserting the defense of failure to exhaust, or that there are any other special circumstances under *Hemphill* and its progeny that would excuse plaintiff's failure to exhaust his administrative remedies. Plaintiff admitted during his deposition that the grievance process was available to him, which was corroborated by the fact that he filed five grievances at Mid-State during the relevant time period. *See, e.g., Black v. Fischer*, No. 12 Civ. 2341, 2013 WL 1314940, at *8-9 (S.D.N.Y. Mar. 28, 2013) (the plaintiff's claim that he was deterred from pursuing grievances by threats from a defendant was overcome by the fact that plaintiff filed other grievances and complaints during the relevant time period).[8] To the extent plaintiff claims that he filed relevant grievances, one of which was never answered by the grievance officials

---

[8] While plaintiff claimed, in his original complaint, that he filed no grievances with respect to this action because of threats by the defendants, he subsequently testified under oath that he did file grievances with respect to the defendants' threats relating to his beard and to the medical care he received in connection with his appendicitis.

12

at Mid-State, plaintiff acknowledged that he did not appeal any such grievances **by his own choice**.[9] Plaintiff acknowledged he was aware of the grievance appeal procedures, so there is no issue that he was misled by the defendants or other DOCCS officials with respect to the steps required to exhaust his administrative remedies.

This court concludes that no rational fact finder could determine that plaintiff exhausted his administrative remedies with respect to the claims in this action.[10] Accordingly, I recommends that defendants' motion for summary judgment be granted and plaintiff's amended complaint be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 44) be **GRANTED**, and that plaintiff's amended complaint be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

---

[9] The defendants' statement of material facts (Dkt. No. 44-4, ¶¶ 22-31) and the declarations of CO Conte (Dkt. No. 44-5, ¶¶ 6-13) and CO Kochan (Dkt. No. 44-6, ¶¶ 6-12), which plaintiff did not dispute, establish that these two defendants had no role in the grievance process at Mid-State and did nothing to restrict plaintiff's use of the process.

[10] If, notwithstanding plaintiff's own interpretation of his amended complaint during his deposition, the pleading were construed to raise claims relating to the misbehavior report defendant Kochan filed against plaintiff or the alleged desecration of plaintiff's kufi or Quar'an, the record indicates that plaintiff did not fully exhaust his administrative remedies with respect to those claims either.

13

*Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**Dated: March 25, 2015**

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge